IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN E. KING, | No. C 05-3478 CW |
| Plaintiff, | ORDER DENYING PLAINTIFF'S APPLICATION FOR AN ORDER TO SHOW CAUSE AND GRANTING MOTION FOR AWARD OF ATTORNEYS' FEES |
| v. | |
| GE FINANCIAL ASSURANCE COMPANY, PHOENIX HOME LIFE MUTUAL COMPANY, THE SONOMA NATIONAL BANK GROUP LONG TERM DISABILITY PLAN, and SONOMA NATIONAL BANK, | |
| Defendants. | |

Plaintiff John E. King has filed an ex parte application for an order to show cause why Defendants GE Financial Assurance Company, Phoenix Home Life Mutual Insurance Company, The Sonoma National Bank Group Long Term Disability Plan and Sonoma National Bank should not be sanctioned for failure to comply with the Court's March 28, 2006 Order Granting Plaintiff's Motion for Judgment (hereinafter the March 28, 2006 Order). Defendants have responded to the order to show cause. Plaintiff separately moves pursuant to 29 U.S.C. § 1132(g) for an award of attorneys' fees. Defendants oppose the motion for attorneys' fees. The matters were decided on the papers. Having considered all of the papers filed by the parties, the Court denies Plaintiff's application for an order to show cause and grants Plaintiff's motion for attorneys'

fees, as described below.

## BACKGROUND

The present dispute is related to Plaintiff's first lawsuit against Defendants in this Court, King v. GE Financial Assurance Co., No. C 02-4144 (King I) for violations of his rights under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. (ERISA).  In that action, the Court found that Defendants abused their discretion by terminating Plaintiff's long-term disability benefits.  King I, Oct. 8, 2003 Order Granting Plaintiff's Mot. for J. and Denying Defs.' Cross-Mot. at 11. The Ninth Circuit affirmed this finding, and its mandate was spread on July 14, 2005.

Subsequently, Defendants paid Plaintiff the total amount of the judgment.  Without giving Plaintiff notice of a decision to terminate his benefits again, however, Defendants refused to pay any further benefits for the period after August 31, 2003. Plaintiff filed this second lawsuit (King II) on August 26, 2005, seeking to enforce the Court's October 8, 2003 King I order in his favor.

This King II lawsuit was resolved by cross-motions for judgment pursuant to Federal Rule of Civil Procedure 52.  The Court found that Defendants' failure to continue paying Plaintiff's benefits, in the absence of a new determination that he was not disabled, violated the clear implication of the King I judgment. The Court ordered Defendants to pay Plaintiff's benefits from September 1, 2003, and to continue to pay them unless and until Defendants acquired sufficient evidence that Plaintiff is no longer disabled, and terminated his benefits in accordance with the policy

2

and ERISA. March 28, 2006 Order at 7. The Court also awarded Plaintiff pre- and post-judgment interest and attorneys' fees and costs. Id.

On March 29, 2006, Plaintiff's attorney, Julian M. Baum, wrote to Defendants notifying them of the Court's order and asking them to tender the full payment on or before April 4, 2006. March 29, 2006 Letter from Mr. Baum to Kevin P. McNamara and Michael W. Melendez. Defendants' counsel responded that additional information regarding Plaintiff's sources of income would be required in order to calculate the actual benefits to which he was entitled. April 4, 2006 Letter from Mr. Melendez to Mr. Baum. Mr. Melendez quoted the "Calculation of The Monthly Benefit" portion of the Plan, which states,

> The Monthly Benefit will be payable subject to all the terms of the policy, including, but not limited to, the reductions for Other Income. If you are Partially Disabled, the Monthly Benefit will be payable in accordance with the REHABILITATION part of the Certificate.

The Plan's section on "Other Income" lists categories of benefits or amounts that are considered other income, including worker's compensation; disability benefits under a compulsory benefit law; other disability benefits; employer-funded retirement benefits; Social Security retirement or disability benefits; and income from a formal or informal salary continuance plan. Ex Parte Appl., Insurance Policy Excerpts, RE060. The Plan goes on to state,

> We will only consider as Other Income that amount which, when added to your Gross Monthly Benefit, exceeds 100% of your Basic Monthly Earnings. By Gross Monthly Benefit we mean the amount of your Monthly Benefit prior to any reductions by Other Income.

3

1  Id. Part of the definition of the term "partially disabled" is
2  that an individual be able to perform at least one material duty on
3  either a full-time or a part-time basis; "part time basis," in
4  turn, means a "regular work schedule of fewer than 30 hours per
5  week." Id. at RE055, RE057.
6      Mr. Melendez asked for copies of Plaintiff's past State and
7  federal tax returns, financial records demonstrating all income
8  derived from Plaintiff's farm, and information "regarding all other
9  sources of income generated from any of his activities." Mr. Baum
10 responded to the letter the same day, stating that Plaintiff had
11 had no earnings since 2003 and that the rehabilitation portion of
12 the Plan cited by Mr. Melendez was inapplicable. Mr. Baum asked
13 Mr. Melendez to inform him "immediately" if Defendants would comply
14 with the Court's March 28, 2006 order, and notified him that
15 otherwise Plaintiff intended to file an ex parte application for an
16 order to show cause. Mr. Melendez left Mr. Baum a voice message on
17 April 5, 2006, stating that he would discuss the matter with his
18 clients and respond in the next couple of days. Baum Decl. ¶ 12.
19 Plaintiff filed his application on April 6, 2006 without further
20 communication with Defendants. Mr. Melendez again wrote to Mr.
21 Baum, stating that Defendants intended to pay Plaintiff's benefits
22 subject to a reservation of rights, but reiterating the request for
23 additional financial information. April 7, 2006 Letter from Mr.
24 Melendez to Mr. Baum. On April 10, Plaintiff served a notice of
25 deposition of a corporate defendant under Federal Rule of Civil
26 Procedure 30(b)(6), scheduled for April 25, 2006. Baum Supp. Decl.
27 ¶ 6.
28

4

1    On April 20, Defendants sent Plaintiff a check in the amount
2 of $34,333.75, "in full payment of the back benefits ordered by
3 this Court, plus interest." Melendez Supp. Decl. ¶ 2.  The check
4 was provided subject to a "full reservation of rights and
5 defenses."  Id., Ex. A, April 20, 2006 Letter from Mr. Melendez to
6 Mr. Baum.  Defendants also informed Plaintiff that he had been
7 placed back "on claim," meaning that he would be receiving monthly
8 disability benefits.  After some negotiation, Plaintiff agreed to
9 cancel the Rule 30(b)(6) deposition.  Baum Supp. Decl. ¶¶ 7-8.

10    In Mr. Baum's reply declaration, however, he claims that the
11 $34,333.75 is only a partial payment.  He reasons that the terms of
12 the Plan allow Defendants to offset their disability benefit
13 obligations by the amount of Social Security Disability (SSD)
14 benefits only if the SSD benefits plus the Plan benefits are more
15 than Plaintiff's former basic monthly earnings.  Mr. Baum states,
16 on information and belief, that the total of the SSD benefits
17 Plaintiff currently receives and the amount owed by Defendants does
18 not equal or exceed 100 percent of his former monthly earnings at
19 Sonoma National Bank, and thus the SSD payments cannot be used to
20 offset Defendants' disability benefit obligations.  Id. ¶ 9(b).

21    In support of Plaintiff's motion for attorneys' fees, Mr. Baum
22 submits a billing statement reflecting $60,515.75 in attorneys'
23 fees incurred by him and his partner, Robert C. Weems, in the King
24 II litigation.  In addition, Michael J. Rubino submits a billing
25 statement reflecting $10,918.60 in attorneys' fees incurred in King
26 II.  Mr. Rubino states that he was retained to assist in
27 Plaintiff's representation in order to provide independent advice

5

to Plaintiff because of Defendants' contention that Baum & Weems "erred in its professional advice and duties to plaintiff, such that this suit was completely barred by the doctrine of res judicata."  Rubino Decl. ¶ 3.

DISCUSSION

I.  Application for Order to Show Cause

Plaintiff's application for an order to show cause why Defendants should not be sanctioned for failure to comply with the Court's March 28, 2006 order is mooted in part by Defendants' agreement to pay at least a portion of the benefits owed.

However, the parties continue to dispute the proper calculation of benefits.  Specifically, they appear to dispute whether Plaintiff's Social Security Disability benefits may be used to offset the long-term disability benefits under the Plan.  The parties also dispute whether Plaintiff must at this time provide Defendants with documentation of his income, and if so the extent of the required documentation.

Because Defendants have made a substantial, although possibly partial, payment and have reinstated Plaintiff's benefits, the motion for an order to show cause is denied.  Because Plaintiff's reply brief raises significant new issues, which Defendants have not had an opportunity to address, these remaining disputes are not appropriate for adjudication at this time.  Within two weeks of the date of this order, Defendants may file a surreply addressing these remaining disputed issues.  However, if Defendants allege that Plaintiff is only partially disabled and maintains a regular work schedule of less than thirty hours a week, Defendants must make a

6

new determination, in accordance with the Plan and based on sufficient evidence, that Plaintiff is no longer completely disabled.  See March 28, 2006 Order at 4-5.

The denial of Plaintiff's application for an order to show cause is without prejudice to renewal.  Any renewed application will be decided on the papers.

## II. Attorneys' Fees and Costs

### A. Applicable Law

In the Ninth Circuit, reasonable attorneys' fees are determined by first calculating the "lodestar."  Jordan v. Multnomah County, 815 F.2d 1258, 1262 (9th Cir. 1987).  "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate."  Morales v. City of San Rafael, 96 F.3d 359, 363 (9th Cir. 1996).  There is a strong presumption that the lodestar figure represents a reasonable fee, Jordan, 815 F.2d at 1262; however, the district court may adjust the award from the lodestar figure upon consideration of additional factors that may bear upon reasonableness.  Kerr v. Screen Guild Extras, Inc., 526 F.2d 67, 70 (9th Cir. 1975).

Determining a reasonable hourly rate is a critical inquiry. Jordan, 815 F.2d at 1262 (citing Blum v. Stenson, 465 U.S. 886, 895 n.11).  In establishing the reasonable hourly rate, the district court should take into account (1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, (4) the results obtained, Cabrales v. County of Los Angeles, 864 F.2d 1454, 1464 (9th Cir.

7

1  1988), and (5) the contingent nature of the fee agreement. City of
2  Burlington v. Dague, 505 U.S. 557, 562-63 (1992). These factors
3  are subsumed in the initial lodestar calculation, and should not
4  serve as independent bases for adjusting fee awards. Morales, 96
5  F.3d at 363-64. Reasonable fees are generally calculated according
6  to the prevailing market rates in the forum district. Gates v.
7  Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992).

8  The Supreme Court has recognized that, while it is appropriate
9  for the district court to exercise its discretion in determining an
10 award of attorneys' fees, it remains important for the court to
11 provide "a concise but clear explanation of its reasons for the fee
12 award." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983); Hall v.
13 Bolger, 768 F.2d 1148, 1151 (9th Cir. 1985) (in computing an award,
14 the district court should provide a "detailed account of how it
15 arrives at appropriate figures for 'the number of hours reasonably
16 expended' and 'a reasonable hourly rate'") (quoting Blum, 465 U.S.
17 at 898).

18  B.  Analysis

19  As a preliminary matter, Defendants argue that Plaintiff has
20 failed properly to state a demand for attorneys' fees because he
21 has not complied with Civil Local Rule 54-6(a), which requires
22 counsel to "meet and confer for the purpose of resolving all
23 disputed issues relating to attorney's fees before making a motion
24 for award of attorney's fees." In this case, however, the Court
25 had already determined that Plaintiff would be entitled to an award
26 of attorneys' fees, and Defendants' opposition does not suggest
27 that a meeting now would be fruitful. Therefore, the Court will

28

8

not order Plaintiff to comply with Rule 54-6(b)'s  meet and confer requirement.

          1.   Baum & Weems Hourly Rates

Defendants generally suggest that Mr. Baum's rate is excessive because the overall amount of fees requested exceeds Plaintiff's recovery.  The Court notes that the amount of Plaintiff's recovery is still subject to dispute, and that Defendants' analysis fails to account for the value of reinstatement of benefits.  However, even assuming that the attorneys' fee award is double that of Plaintiff's recovery, it would still be reasonable under the circumstances here, where Defendants' own intransigent conduct has necessitated a duplicative action.  Furthermore, as the Court noted in its order awarding attorneys' fees in King I, failure to award full fees in small cases would make it difficult for plaintiffs in such cases to obtain their benefits.  King I, June 14, 2004 Order Granting Pl.'s Mot. for Recovery of Att'ys Fees and Costs 9-10.

This Court has previously found rates of $395 and $350 per hour to be reasonable in the San Francisco Bay Area market for Mr. Baum and Mr. Weems, respectively, in light of each attorney's education, experience, knowledge and qualifications, for work done in connection with another ERISA case in 2003 and 2004.  See Order Granting Pl.'s Mot. for Att'ys Fees, May v. Metro. Life Ins. Co., No. C 03-5056 CW (N.D. Cal., Apr. 7, 2005).

Here, Plaintiff has submitted additional declarations showing that Mr. Baum and Mr. Weems' rates have increased to $415 and $400 per hour, respectively.  Gregory L. Surman, a former partner with the law firm of Gibson, Dunn & Crutcher, declares that he considers

9

1 Mr. Baum to be a highly skilled ERISA litigation attorney, and
2 that, on information and belief, Mr. Baum and Mr. Weems' hourly
3 rates are within the prevailing market rates charged by skilled
4 ERISA counsel in the San Francisco and Los Angeles areas.
5    Defendants object to Mr. Surman's declaration on the grounds
6 that his statements regarding ERISA attorneys' rates are based on
7 "information and belief."  However, Defendants submit no evidence
8 in the form of declarations or affidavits that the hourly rates
9 represented in Plaintiff's declarations are unreasonable or
10 excessive.  The Court finds that Baum & Weems' new hourly rates
11 requested by Plaintiff are reasonable in light of the prevailing
12 market rates for similarly skilled and experienced ERISA attorneys.
13         2.  Number of Hours Expended by Baum & Weems
14    Defendants object to the hours spent by Mr. Baum after the
15 March 28, 2006 order granting judgment in Plaintiff's favor,
16 particularly to those spent on his work on the ex parte application
17 for an order to show cause.  Even though no order to show cause was
18 ultimately necessary, see Section I above, the record does not show
19 that Defendants would have resumed payments to Plaintiff in the
20 absence of the application for an order to show cause or the Rule
21 30(b)(6) notice.  The Court finds that Plaintiff's application was
22 not unnecessary, especially in light of Defendants' past conduct.
23 Accordingly, the Court finds to be reasonable the 2.5 hours spent
24 by Mr. Baum and the 0.2 hours spent by Mr. Weems relating to the ex
25 parte application for an order to show cause.
26    Defendants provide no support for their argument that post-
27 judgment discussions between Mr. Baum and the mediator "have

10

nothing to do with the litigation for which fees are being sought." Mr. Baum declares that the discussions with the mediator were, in fact, related to this litigation.  Baum Decl. ¶ 2.  It is clear that the parties continue to dispute the calculation of benefits. Therefore, the Court finds that the 0.8 hours spent by Mr. Baum communicating with the mediator was reasonable and is compensable.

The Court overrules Defendants' additional objections that certain activities were unnecessary or are not adequately described; Baum & Weems' billing statement is sufficiently detailed and the activities described were reasonably necessary.  In total, the Court finds that Mr. Baum reasonably spent 143.9 and Mr. Weems reasonably spent 0.7 hours relating to this action.

        3.   Mr. Rubino's Hourly Rate

Mr. Rubino's declaration details his hourly billing rate and professional experience.  He is a Phi Beta Kappa graduate of the University of California at Los Angeles, and a 1987 graduate of Hastings College of the Law.  He has ten years of experience as an arbitrator for the Orange County Bar Association's mandatory fee arbitration program, and states, based on this experience, that his requested $395 per hour rate is reasonable and within the prevailing market rate for litigators of his experience and training.  In addition, Plaintiff submits the declaration of Donald Hamman, the head of litigation for the law firm of Stradling, Yocca, Carlson & Rauth, who declares that he considers Mr. Rubino to be highly skilled and that Mr. Rubino's hourly rate is within the prevailing market rates in southern California for lawyers of his education and experience.

Defendants argue that Mr. Rubino should not be compensated at a rate similar to Mr. Baum and Mr. Weems, because Mr. Rubino has less ERISA experience. However, the litigation services Mr. Rubino rendered did not include complex ERISA questions, but rather drew on his general business litigation expertise. Defendants submit no evidence in the form of declarations or affidavits that Mr. Rubino's requested hourly rate is unreasonable or excessive. Accordingly, the Court finds that the hourly rate requested by Plaintiff for Mr. Rubino is reasonable in light of the prevailing market rates for similarly skilled and experienced attorneys.

    4.   Number of Hours Expended by Mr. Rubino

Defendants argue generally that Mr. Rubino's services were unnecessarily duplicative of those provided by Mr. Baum. However, Defendants identify no support for their characterization of Mr. Rubino's services as merely duplicative "oversight." It was reasonable for Baum & Weems to advise Plaintiff to consult with Mr. Rubino regarding Defendants' ill-advised <u>res judicata</u> defense, which alleged errors by Mr. Baum. Moreover, as Plaintiff notes, the mere fact that two attorneys attended the Case Management Conference and mediation or analyzed papers regarding the dispositive motion does not mean that the two attorneys' work is unnecessarily duplicative. In this context of this case, the Court finds that there is no evidence of overstaffing and that the hours spent by Mr. Rubino were reasonable.

However, clerical and secretarial work is not compensable as attorneys' fees. <u>Davis v. City and County of San Francisco</u>, 976 F.2d 1536, 1543 (9th Cir. 1992) <u>vacated in part on other grounds at</u>

12

984 F.2d 345 (9th Cir. 1993). The Court finds that the time Mr. Rubino spent making arrangements to go to Oakland and checking the availability of flights is not compensable. Therefore, the Court reduces the number of hours for which Mr. Rubino may be compensated by 0.4, for a total of 25.9 hours.

## CONCLUSION

In conclusion, the Court awards attorneys' fees for 145.05 hours claimed by Mr. Baum, 0.8 hours claimed by Mr. Weems and 25.9 of the hours claimed by Mr. Rubino, at the rates requested, for a total of $60,515.75 to Baum & Weems and $10,230.50 to Mr. Rubino. The Court also awards to Mr. Rubino the $530.10 requested in costs. Defendants shall pay these amounts forthwith. As described above, Defendants may file a surreply of no more than ten pages within two weeks of the date of this order.

IT IS SO ORDERED.

Dated: 6/30/06

_____
CLAUDIA WILKEN
United States District Judge